

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. LA 2:07-14196 ER |
| | Chapter 7 |
| VANESSA PATRICIA CANALES, | MEMORANDUM OF DECISION |
| | |
| | Date:  September 20, 2007 |
| | Time:  11:00 A.M. |
| | Place: Ctrm. 1568, 15th Fl. |
| Debtor. | 255 E. Temple Street |
| | Los Angeles, CA 90012 |

The means test of 11 U.S.C. § 707(b) stands out as among the foremost changes to bankruptcy law enacted by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). At its core, the means test seeks to determine whether a debtor can repay a portion of his or her debt. If so, then the debtor will be channeled into Chapter 13 and will be required to repay a specific amount of debt as a precondition to relief. If not, however, then the debtor will be allowed to proceed in Chapter 7 toward liquidation and possible discharge.

This case requires the Court to examine a subpart of the means test that has caused considerable disagreement among bankruptcy courts nationwide. Specifically, the central issue in this case is whether 11 U.S.C. § 707(b)(2)(A)(ii)(I) permits a Chapter 7 debtor who owns her vehicle free and clear of any loan or lease payments to claim a transportation ownership deduction for purposes of calculating her disposable monthly income under the means test. After considering the issue in depth and for the reasons discussed *infra* in Part III, the Court concludes that a debtor in Chapter 7 may not claim a transportation ownership deduction for a vehicle that she owns free and clear of any loan or lease payments.

I. **Jurisdiction**

As a general principle, U.S. bankruptcy courts exercise jurisdiction by referral over all core bankruptcy proceedings. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), General Order No. 266 of the United States District Court for the Central District of California, and 28 U.S.C. § 157(b). The U.S. Trustee's Motion to Dismiss Chapter 7 Case Pursuant to 11 U.S.C. § 707(b)(2) and (3)(B) and Contingent Motion to Extend Bar Date for Filing Complaint Under 11 U.S.C. § 727 Objecting to Debtor's Discharge is a core proceeding because dismissal of a bankruptcy case arises only in bankruptcy. See Maitland v. Mitchell (In re Harris Pine Mills), 44 F.3d 1431, 1435 (9th Cir. 1995).

II. **Statement of Facts and Procedural History**

On May 22, 2007, Debtor Vanessa Patricia Canales ("Debtor") filed a voluntary petition under Chapter 7 of the U.S. Bankruptcy Code. The Debtor is a school teacher for the Los Angeles Unified School District. In the months preceding her filing, the Debtor struggled under a new

payroll system implemented by the school district that resulted in fluctuating monthly income payments. This system, among other factors, contributed to the Debtor's decision to file for bankruptcy.

The Debtor is listed on the title to three vehicles. On the one hand, the Debtor's mother and sister drive two of these vehicles. See Opposition at 4. Both vehicles serve as security for loans, and the Debtor's mother and sister make payments on those loans. See id. The Debtor makes no payments on these vehicles. See id. On the other hand, the Debtor drives the third vehicle, a 2000 Chevrolet Malibu worth approximately $3,995. See id. Unlike the other two vehicles, the third vehicle is paid for in full and thus there are no loan or lease payments for the vehicle. See id. As a consequence, although the Debtor is listed on the title to all three vehicles, she makes ownership payments on none of them. See id.

In filing for bankruptcy, the Debtor submitted a Statement of Current Monthly Income and Means Test Calculation for Use in Chapter 7 ("Form 22A"). Subsequently, the Debtor twice updated her income and means test calculations by filing an Amended Statement of Current Monthly Income and Means Tests Calculation for Use in Chapter 7 ("Form B22A").[1] The Debtor filed her most recent Form B22A on June 28, 2007.[2]

On Form B22A, the Debtor checked the box indicating that the presumption of abuse of Chapter 7 arises in light of a monthly disposable income of $301.96. However, the Debtor also listed an additional monthly expense for union dues of $171.62 in Part VII of Form

---

[1] The Debtor first filed Form 22A on May 22, 2007, along with her original filing. On May 30, 2007, the Debtor amended Form 22A by filing Form B22A. Finally, on June 28, 2007, the Debtor filed her second and most recent Form B22A.

[2] The Court will refer to the Form B22A filed on June 28, 2007 for the relevant income and deduction calculations.

B22A, which was not taken into consideration when calculating the Debtor's monthly disposable income, but which the Debtor contends should be an additional deduction from her current monthly income.[3] Although uncertainty remains on this issue, the Court will assume for the sake of argument that the Debtor's union dues should be deducted from her monthly disposable income.

In completing Form B22A, the Debtor claimed a deduction of $475 under the Local Standards for transportation ownership or lease expenses for one vehicle.[4] See Form B22A, Line 23. In addition, the Debtor claimed a deduction of $353 under the Local Standards for transportation expenses related to vehicle operation for one vehicle. See Form B22A, Line 22. As a result, the Debtor seeks to deduct transportation expenses both for ownership costs and for operation costs.

On July 27, 2007, the U.S. Trustee filed the Motion to Dismiss Chapter 7 Case Pursuant to 11 U.S.C. § 707(b)(2) and (3)(B) and Contingent Motion to Extend Bar Date for Filing Complaint Under 11 U.S.C. § 727 Objecting to Debtor's Discharge ("Motion"). In the Motion, the U.S. Trustee argues that the Debtor has erroneously completed the means test calculations in Form B22A. See Motion at 9-10. The U.S.

---

[3] The U.S. Trustee at times points to the fact that the Debtor checked the box indicating the presumption arises as apparent support for dismissal. See Supp. Brief at 5-6, 7. At other times, however, the U.S. Trustee argues that the $171.62 deduction for union dues should be included as part of the Debtor's mandatory payroll deductions on Line 26 and thus deducted from her monthly disposable income figure. See Motion at 9; Sadovnick Decl. at ¶ 8.

[4] The Debtor claims a deduction of $475 for transportation ownership expenses, but in fact the correct maximum deduction for transportation ownership expenses is $471. As discussed infra, the IRM Local Standards applicable to the Central District of California for bankruptcy cases filed between February 1, 2007, and October 14, 2007, authorize maximum ownership allowances of $471 for one car.

Trustee submits the Declaration of Wendy Carole Sadovnick ("Sadovnick Decl."), a bankruptcy analyst employed by the Office of the United States Trustee for the Central District of California, in support of numerous corrections to the Debtor's Form B22A. Sadovnick proposes multiple changes to the Debtor's Form B22A, see Sadovnick Decl. ¶¶ 6-11, but the most significant correction is eliminating the Debtor's claimed deduction for transportation ownership expenses, see id. at ¶ 7. The U.S. Trustee argues that the Debtor is not eligible for the transportation ownership deduction because she owns the vehicle free and clear. See Motion at 10-13; Supp. Brief at 10-17. Additionally, the U.S. Trustee asserts that, even if the Debtor is eligible for the transportation ownership deduction, the case should be dismissed under 11 U.S.C. § 707(b)(3)(B) because the totality of the circumstances underlying the Debtor's financial situation demonstrate abuse of Chapter 7. See Motion at 13-20; Supp. Brief at 17-28. Lastly, if the Court rejects dismissal pursuant to § 707(b)(2) and (3), the U.S. Trustee requests an order extending the bar date for the filing of a complaint for the denial of discharge under § 727. See Motion at 20-21.

In response, the Debtor filed the Opposition to Motion of the United States Trustee to Dismiss Case Under 11 U.S.C. § 707(b)(2) and (3)(b) ("Opposition"). In the Opposition, the Debtor argues that the case should not be dismissed for abuse. Finally, the U.S. Trustee filed the Reply to Debtor's Opposition to Motion to Dismiss Pursuant to 11 U.S.C. § 707(b)(2) of the Bankruptcy Code ("Reply").

The Court heard argument on the Motion on September 20, 2007. At that time, the Court requested additional briefing from the parties. Accordingly, the U.S. Trustee submitted the Supplemental Brief in Support of United States Trustee's Notice of Motion and Motion to

Dismiss Chapter 7 Case Pursuant to 11 U.S.C. § 707(b)(2) and (3)(B) ("Supp. Brief") and the Request for Judicial Notice in Support of Supplemental Brief in Support of United States Trustee's Notice of Motion and Motion to Dismiss Chapter 7 Case Pursuant to 11 U.S.C. § 707(b)(2) and (3)(B). The Debtor filed no supplemental briefing with the Court.

### III. Discussion

In the Motion, the U.S. Trustee requests that the Court dismiss the Debtor's Chapter 7 petition pursuant to 11 U.S.C. § 707(b)(1). The U.S. Bankruptcy Code authorizes a court to dismiss a case filed under Chapter 7 after a finding of abuse. See 11 U.S.C. § 707(b)(1). In pertinent part, § 707(b)(1) provides:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, . . . , if it finds that the granting of relief would be an abuse of the provisions of this title.

11 U.S.C. § 707(b)(1). Section 707(b) thus vests the court with discretion to determine whether a case should be dismissed, but conditions any such dismissal on notice and a hearing, a finding that the debtor's debts are primarily consumer debt, and a finding that granting the debtor relief would be an abuse of Chapter 7. See 11 U.S.C. § 707(b)(1).

As a preliminary matter, the U.S. Trustee brought the Motion on regular notice and the Court heard the matter on September 20, 2007. This satisfies the requirement of notice and a hearing. See U.S.C. § 707(b)(1).

Next, the Court concludes that the Debtor's debts are "primarily consumer debts" for purposes of dismissal under § 707(b)(1). See 11

U.S.C. § 101(8); 11 U.S.C. § 707(b)(1). In § 101(8), the Bankruptcy Code defines "consumer debt" as "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). The U.S. Court of Appeals for the Ninth Circuit interprets the term "primarily" in § 707(b)(1) to require that the overall ratio of consumer to non-consumer debt is greater than fifty percent. See Zolg v. Kelly (In re Kelly), 841 F.2d 908, 913 (9th Cir. 1988). Here, the Debtor herself indicates in her petition that the nature of her debt is primarily consumer debt. Accordingly, the Debtor falls within the scope of § 707(b)(1) as a debtor with primarily consumer debt.

The remaining hurdle of § 707(b)(1) thus represents the crux of this case and requires the Court to determine whether granting relief to the Debtor would be an abuse of Chapter 7. See 11 U.S.C. § 707(b)(1). The U.S. Trustee argues that the presumption of abuse arises under both § 707(b)(2) and § 707(b)(3)(B). Therefore, the Court now turns to a discussion of those issues.

    A.   <u>Dismissal Pursuant to 11 U.S.C. § 707(b)(2) Based on Presumptive Abuse under the Means Test</u>

The U.S. Trustee first requests that the Debtor's petition be dismissed pursuant to 11 U.S.C. § 707(b)(2) for presumed abuse. In relevant part, § 707(b)(2)(A)(i) provides:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of-- (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,000, whichever is greater; or (II) $10,000.

11 U.S.C. § 707(b)(2)(A)(i). The U.S. Trustee rests his argument under § 707(b)(2) on the claim that the Debtor has failed to complete Form B22A in an accurate manner. Specifically, the U.S. Trustee argues that

-7-

the Debtor is not eligible for a $471 deduction for transportation ownership/lease expense on Line 23 of Form B22A. If the Debtor is not eligible for a $471 deduction, then the Debtor will fail the means test.

In the wake of BAPCPA, courts across the nation have struggled to determine whether a debtor may claim a transportation ownership deduction in the absence of any loan or lease payments. Some courts agree with the U.S. Trustee that a debtor who owns a vehicle free and clear of any transportation ownership or lease expenses may not claim the deduction. See Fokkena v. Hartwick, 373 B.R. 645 (D. Minn. 2007); In re Ross-Tousey, 368 B.R. 762 (E.D. Wis. 2007); In re Bennett, 371 B.R. 440 (Bankr. C.D. Cal. 2007); In re Brown, -- B.R. --, 2007 WL 3003000 (Bankr. S.D. Tex. 2007); In re Ceasar, 364 B.R. 257 (Bankr. W.D. La. 2007); In re Cole, 371 B.R. 454 (Bankr. W.D. Wash. 2007); In re Devilliers, 358 B.R. 849 (Bankr. E.D. La. 2007); In re Howell, 366 B.R. 153 (Bankr. D. Kan. 2007); In re Slusher, 359 B.R. 290 (Bankr. D. Nev. 2007); In re Talmadge, 371 B.R. 96 (Bankr. M.D. Pa. 2007); In re Barraza, 346 B.R. 724 (Bankr. N.D. Tex. 2006); In re Carlin, 348 B.R. 795 (Bankr. D. Or. 2006); In re Hardacre, 338 B.R. 718 (Bankr. N.D. Tex. 2006); In re Harris, 353 B.R. 304 (Bankr. E.D. Okla. 2006); In re Lara, 347 B.R. 198 (Bankr. N.D. Tex. 2006); In re McGuire, 342 B.R. 608 (Bankr. W.D. Mo. 2006); In re Oliver, 350 B.R. 294 (Bankr. W.D. Tex. 2006); In re Wiggs, No. 06-B-70203, 2006 WL 2246432 (Bankr. N.D. Ill. Aug. 4, 2006); see also Gary Neustadter, 2005: A Consumer Bankruptcy Odyssey, 39 Creighton L. Rev. 225, 295 (2006). By contrast, other courts side with the Debtor in concluding that a debtor may claim the deduction regardless of whether the vehicle is paid in full. See In re McIvor, No. 06-42566, 2006 WL 3949172 (E.D. Mich. Nov. 15, 2006); In re Chamberlain, 369 B.R. 519 (Bankr. D. Ariz. 2007); In re Crews, Nos. 06-13117, 06-

15255, 2007 WL 626041 (Bankr. N.D. Ohio Feb. 23, 2007); In re Enright, No. 06-10747, 2007 WL 748432 (Bankr. M.D. N.C. Mar. 6, 2007); In re Sawdy, 362 B.R. 898 (Bankr. E.D. Wis. 2007); In re Scarafiotti, -- B.R. --, No. 06-11402 EEB, 2007 WL 2745700 (Bankr. D. Colo. 2007); In re Swan, 368 B.R. 12 (Bankr. N.D. Cal. 2007); In re Watson, 366 B.R. 523 (Bankr. D. Md. 2007); In re Zak, 361 B.R. 481 (Bankr. N.D. Ohio 2007); In re Demonica, 345 B.R. 895 (Bankr. N.D. Ill. 2006); In re Fowler, 349 B.R. 414 (Bankr. D. Del. 2006); In re Grunert, 353 B.R. 591 (Bankr. E.D. Wis. 2006); In re Haley, 354 B.R. 340 (Bankr. D. N.H. 2006); In re Hartwick, 352 B.R. 867 (Bankr. D. Minn. 2006), rev'd by Fokkena v. Hartwick, 373 B.R. 645 (D. Minn. 2007); In re Naslund, 359 B.R. 781 (Bankr. D. Mont. 2006); In re Prince, No. 06-10328C-7G, 2006 WL 3501281 (Bankr. M.D. N.C. Nov. 30, 2006); In re Wilson, 356 B.R. 114 (Bankr. D. Del. 2006); see also Watchdog or Attack Dog?: Hearing on the United States Trustee Program Before the Subcomm. on Commercial and Admin. Law of the H. Comm. on the Judiciary, 110th Cong. (Oct. 2, 2007)(statement of Eugene R. Wedoff, J.); Eugene R. Wedoff, Means Testing in the New § 707(b), 79 Am. Bankr. L.J. 231, 256-58 (2005).

As of yet, the bankruptcy courts to address the issue have not reached any clear majority opinion. Rather, the bankruptcy courts have split on the issue in an increasingly exhaustive search to discover clarity and principle in the statutory language of § 707(b)(2). Although some federal district courts have now taken up the question as well, it seems unlikely that any unanimity in the law will emerge in the Ninth Circuit and elsewhere until the appellate courts address the issue in

the years to come.[5] Nonetheless, neither the Court nor the parties have the luxury of awaiting future decisions.

11 U.S.C. § 707(b)(2)(A)(ii) sets forth general guidelines that govern the calculation of a debtor's monthly expenses in Chapter 7 cases. See 11 U.S.C. § 707(b)(2)(A)(ii). In particular, § 707(b)(2)(A)(ii)(I) provides:

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service [...].

11 U.S.C. § 707(b)(2)(A)(ii)(I) (emphasis added). The House Report that accompanied BAPCPA explains that the relevant standards are those listed in the Internal Revenue Service Financial Analysis Handbook as Necessary Expenses under the National and Local Standards categories. H.R. Rep. No. 109-31 at 13-14 (2005) (footnotes omitted). In turn, the Financial Analysis Handbook is part of the IRS's Internal revenue Manual ("IRM"). H.R. Rep. No. 109-31 at 13, n. 62. The IRS publishes neither the National Standards nor the Local Standards as part of the IRM but rather releases them only on the internet. The Local Standards are set out in a series of tables.

The Local Standards establish allowances both for transportation expenses and for housing/utilities expenses. The IRM asserts that

---

[5] The Court recognizes, however, that the U.S. Trustee has appealed this issue to the U.S. District Court for the Central District of California in the case of In re Mann, No. SV 1:07-1118-KT (unpublished). The U.S. Trustee filed its appeal on September 4, 2007, after the bankruptcy court entered an order on August 22, 2007, holding that a debtor who owns his vehicle outright may claim the transportation ownership deduction under the Local Standards. In all likelihood, the district court will soon establish a precedent that will shed further insight on this issue for courts in the Central District of California.

expense amounts listed in the Local Standards function solely as caps on the debtor's actual expenses for transportation or housing: "[T]he local standards for housing, utilities, and transportation serve as a cap. The taxpayer is allowed the local standard or the amount actually paid, whichever is less." IRM § 5.19.1.4.3.2(2)(emphasis omitted).

The Local Standards for transportation expenses permit allowances for ownership costs, including loan and lease payments, and for operating costs. The Local Standards applicable to the Central District of California for bankruptcy cases filed between February 1, 2007, and October 14, 2007, authorize maximum ownership allowances of $471 for one car and an additional $332 for a second car. If, however, the taxpayer or debtor owns the car free and clear of any loan or lease payments, then the IRM guidelines purport to bar any allowance for transportation ownership expenses: "If a taxpayer has no car payment, or no car, only the operating costs portion of the transportation standard is used to figure the allowable transportation expense." IRM § 5.19.1.4.3.4(6). Thus, the IRM speaks with clarity on the issue of transportation ownership allowances and, under the IRS system, an individual with no car payments is not eligible for the transportation ownership allowance. See id.

Yet the difficulty of this case arises not from an interpretation of the IRM standards but rather from the statutory language of § 707(b)(2)(A)(ii)(I). As always, the Court must look to the plain language of the statute and, if clear, the Court must enforce the laws as written by Congress. See Lamie v. U.S. Trustee, 540 U.S. 526, 534 (2004). Although the IRS guidelines may be helpful in some contexts, they do not give meaning to the statute itself. Thus, the Court must

analyze the language of § 707(b)(2)(A)(ii)(I) in order to understand its meaning instead of relying on the IRS guidelines.

The statutory distinction drawn between "applicable" and "actual" expenses in § 707(b)(2)(A)(ii)(I) has caused no little disagreement among the courts. To repeat, Section 707(b)(2)(A)(ii)(I) provides:

> The debtor's monthly expenses shall be the debtor's <u>applicable</u> monthly expense amounts specified under the National Standards and Local Standards, and the debtor's <u>actual</u> monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service [...].

11 U.S.C. § 707(b)(2)(A)(ii)(I)(emphasis added). Whether these adjectives were intended to convey wholly different meanings, synonymous meanings, or similar but nuanced meanings rests at the heart of this issue.

Some courts have held that Congress's use of "actual" with respect to Other Necessary Expenses and "applicable" with respect to the National and Local Standards reveals that Congress intended two different applications. See <u>In re Swan</u>, 368 B.R. 12, 18 (Bankr. N.D. Cal. 2007); <u>In re Demonica</u>, 345 B.R. 895, 901-02 (Bankr. N.D. Ill. 2006); <u>In re Fowler</u>, 349 B.R. 414, 418 (Bankr. D. Del. 2006). These courts reason that Congress, by using different adjectives, intended to distinguish sharply between the two classes of expenses. See <u>In re Swan</u>, 368 B.R. at 18. Because Congress deliberately chose not to refer to a debtor's actual expenses when calculating deductions under the Local and National Standards, but in the same sentence referred to a debtor's actual expenses in regard to "Other Necessary Expenses," the debtor must be entitled to the fixed or "applicable" deduction under the Local Standards for transportation ownership expenses so long as she owns a vehicle. See <u>In re Fowler</u>, 349 B.R. at 418. As the <u>Swan</u> court explained:

> A debtor's actual expenses are only relevant with respect to expenses that fall into the 'Other Necessary Expenses' category. Applied specifically to the transportation ownership expense, which clearly falls within the first clause of § 707(b)(2)(a)(ii)(I) and is set forth in the Local Standards, this interpretation leads to the conclusion that any debtor who owns a vehicle is entitled to the deduction for transportation ownership, regardless of whether or not the debtor, at the moment of plan confirmation, has an actual car payment expense.

In re Swan, 368 B.R. at 18 (citations omitted). Under this interpretation, any debtor who owns a vehicle is allowed a transportation ownership expense regardless of whether she does or does not make lease or loan payments.

By contrast, other courts interpret Congress' use of the word "applicable" in § 707(b)(2)(A)(ii)(I) to limit eligibility for the various expense amounts specified under the National and Local Standards to those debtors for whom the particular expense actually applies. See In re Ross-Tousey, 368 B.R. 762, 765 (E.D. Wisconsin 2007); In re Bennett, 371 B.R. 440, 445 (Bankr. C.D. Cal. 2007); In re Devilliers, 358 B.R. 849, 864 (Bankr. E.D. La. 2007); In re Wiggs, 2006 WL 2246432, at *2-3 (Bankr. N.D. Ill. 2006). In other words, a court must first determine which expenses are applicable to the specific debtor and only then permit the debtor to claim the amount set forth in the National or Local Standards. See In re Devilliers, 358 B.R. at 864. The Ross-Tousey court explained its reasoning as follows:

> Instead of viewing 'applicable' and 'actual' as having virtually opposite meanings, another reading of the statute would allow the debtor to deduct the auto expense listed in the Standards *if* the debtor actually had an auto expense in the first place. This reading gives meaning to the distinction between 'applicable' and 'actual' without taking a further step to conclude that 'applicable' means 'nonexistent' or 'fictional.' Under this reading, it is true that the debtor's 'actual' expense does not control the *amount* of the deduction, but the debtor must still have *some* expense in the first place before the Standard amount becomes 'applicable.' The term 'applicable' merely means, in this context, that when a debtor has an automobile ownership

-13-

> expense, his deduction is not based on that actual expense but on the applicable expenses listed in the Standards. As another court has recently concluded, '[i]f a debtor does not own or lease a vehicle, the ownership expense is not 'applicable' to that debtor.

In re Ross-Tousey, 368 B.R. at 765 (citations omitted). Under this reasoning, a debtor who makes transportation ownership payments is entitled to deduct the amount fixed under the Local Standards.

Most courts interpreting § 707(b)(2)(A)(ii)(I) hold that if a debtor is eligible for a transportation ownership deduction, then the debtor may claim the amount fixed under the Local Standards regardless of the debtor's actual payment amount. See In re Ross-Tousey, 368 B.R. at 765; In re Fowler, 349 B.R. at 418-19; see also Eugene R. Wedoff, Means Testing in the New § 707(b), 79 Am. Bankr. L.J. 231, 256-58 (2005). This conclusion cuts against the approach of the IRS Collection Standards, which provide that, if eligible, "[t]he taxpayer is allowed the amount actually spent, or the standard, whichever is less." IRM § 5.19.1.4.3.2(2) (12-15-2002) (emphasis omitted). However, courts reject the IRS approach based on the plain language of the statute. Section 707(b)(2)(A)(ii)(I) states that the debtor's allowed expense deductions "shall be" the "amounts specified under the National Standards and the Local Standards." 11 U.S.C. § 707(b)(2)(A)(ii)(I). Unlike the IRM approach, the Bankruptcy Code makes no reference either to reducing or capping a debtor's claimed deduction under the Local Standards. Thus, most courts agree that the plain language of the statute entitles eligible debtors to deduct the fixed amounts for transportation ownership expenses specified in the Local Standards instead of reducing or capping their deductions based on actual expenses. Some courts, however, appear to have adopted the IRS approach in whole. See In re Bennett, 371 B.R. 440, 445 (Bankr. C.D. Cal. 2007).

-14-

After reviewing the statute, the case law, and the arguments of the parties, the Court concludes that under § 707(b)(2)(A)(ii)(I) a Chapter 7 debtor who owns her vehicle free and clear of any loan or lease payments is not entitled to the transportation ownership deduction. In reaching this decision, the Court sides in large measure with the rationales adopted by the courts in In re Bennett and In re Ross-Tousey, among others. The Court agrees that the terms "applicable" and "actual" are not interchangeable, but rejects the conclusion that the two terms must be wholly exclusive of each other. Rather, the Court reads the term "applicable" in § 707(b)(2)(A)(ii)(I) to require that the debtor make some lease or loan payment on a vehicle in order to be entitled to claim a deduction for transportation ownership expenses. As the Ross-Tousey court noted, this reading offers meaning to the distinction between "applicable" and "actual" without so contorting "applicable" as to mean "nonexistent." See In re Ross-Tousey, 368 B.R. at 765.

The instant case is distinguishable from In re Bennett, the other published decision on this issue in the Central District of California, because the motion to dismiss arises in a Chapter 7 case instead of a Chapter 13 case. See In re Bennett, 371 B.R. 440, 441 (Bankr. C.D. Cal. 2007). The Bennett case involved a Chapter 13 debtor who owned two vehicles, one subject to loan payments and the other owned outright, and sought to claim two transportation ownership deductions for $471 and $332, respectively. See id. Although In re Bennett, like this case, interpreted § 707(b)(2)(A)(ii)(I), it did so in the context of Chapter 13 by way of § 1325(b)(3). See id. Thus, the Court addresses this issue in a similar but distinct factual situation. Nonetheless, the Court's decision brings it into line with the analysis adopted by the Bennett court.

In this case, the Debtor is not eligible to claim a $471 deduction for transportation ownership expenses because she owns her car free and clear of any loan or lease payments. Although the Debtor is listed on title to three vehicles, she makes payments on none of them. Thus, under the Court's interpretation of § 707(b)(2)(A)(ii)(I), because the Debtor has no "applicable" transportation ownership payments she may not claim the transportation ownership deduction under the Local Standards for purposes of her means test calculations.

As a result, the Debtor fails the means test under § 707(b)(2) because her monthly disposable income, when multiplied by 60, is not less than the lesser of either 25 percent of the debtor's nonpriority unsecured claims or $10,000.[6] See 11 U.S.C. § 707(b)(2)(A)(i). This means that the presumption of abuse arises under § 707(b)(2). Therefore, the Court will dismiss the Debtor's case pursuant to § 707(b)(1) because the granting of relief would be an abuse of the provisions of Chapter 7.

The Court, however, will stay dismissal of the Debtor's case for 30 days after entry of this Memorandum Opinion in order to allow the Debtor an appropriate period to attempt to rebut the presumption of abuse if she so chooses. See 11 U.S.C. § 707(b)(2)(B).

---

[6] Assuming *arguendo* that the Debtor's union dues should be included as part of the Debtor's mandatory payroll deductions on Line 26, then, based on the figures in Form B22A and after eliminating the transportation ownership expense deduction, the Debtor's total allowed deductions would be $4,185.03 in relation to her current monthly income of $4,790.37. This would leave the Debtor with a monthly disposable income of $605.34 and a 60-month disposable income of $36,320.40. The Debtor's 60-month disposable income is thus not less than a quarter of her non-priority unsecured debt of $105,110.34 or, namely, $26,277.58. Similarly, the Debtor's 60-month disposable income is also not less than $10,000. Therefore, the presumption of abuse arises under § 707(b)(2)(A). Moreover, a similar outcome would result if the Debtor were not eligible to deduct her union dues.

In reaching its holding, the Court has no occasion to decide whether a debtor eligible to claim the transportation ownership deduction is entitled to the fixed amount or "the amount actually spent, or the standard, whichever is less." IRM § 5.19.1.4.3.2(2) (emphasis omitted). Some courts have concluded that Congress adopted the IRS cap approach in whole, see In re Bennett, 371 B.R. 440, 445 (Bankr. C.D. Cal. 2007), while other courts have allowed eligible debtors to claim a fixed amount, regardless of actual payments, see In re Ross-Tousey, 368 B.R. at 765. In this case, however, the Court need not decide the issue because the Debtor makes no ownership payments whatsoever and thus is not eligible for any deduction under either approach.

B.  Dismissal Pursuant to 11 U.S.C. § 707(b)(3)(B) for Abuse Based on the Totality fo the Circumstances

The U.S. Trustee next requests that the Debtor's petition be dismissed pursuant to 11 U.S.C. § 707(b)(3)(B) under a totality of the circumstances analysis. In light of the Court's holding under § 707(b)(2)(A)(ii)(I) the Court has no occasion to resolve this issue. However, the Court notes that were a debtor who owns her car free and clear eligible for a transportation ownership deduction of $471, that excess, unspent income would be a significant factor in analyzing a request for dismissal under § 707(b)(3). See In re Fowler, 349 B.R. 414, 421 (Bankr. D. Del. 2006).

C.  Extension of Bar Date for Filing Complaint under 11 U.S.C. § 727 Objecting to Discharge

Finally, the U.S. Trustee requests an extension of the bar date for filing a complaint under 11 U.S.C. § 727. Again, in light of the Court's holding under 707(b)(2)(A)(ii)(I), the Court has no occasion to consider this issue.

**IV. Conclusion**

In sum, the Court concludes that under 11 U.S.C. § 707(b)(2)(A)(ii)(I) a debtor who owns her vehicle free and clear of any loan or lease payment is not eligible for a transportation ownership deduction. The Court will grant the U.S. Trustee's Motion and dismiss the Debtor's case pursuant to the terms of the Order accompanying this Memorandum Decision.

DATED:   October 31, 2007

_____
ERNEST M. ROBLES
United States Bankruptcy Judge

## CERTIFICATE OF SERVICE

I, *Lydia Gonzalez*, hereby certify that on NOV 0 1 2007, I sent by U.S. mail a true copy of the **MEMORANDUM OF DECISION** to the parties at the addresses listed below:

*Debtor*
Vanessa Patricia Canales
616 N. Lagoon Ave. Apt.# 5
Wilmington, CA 90744

*Debtor's Attorney*
Thomas B Ure
800 Wilshire Blvd Ste 1050
Los Angeles, CA 90017

*U.S. Trustee*
United States Trustee (LA)
725 S Figueroa St., 26th Floor
Los Angeles, CA 90017

*Chapter 7 Trustee*
Richard K Diamond
Danning, Gill, Diamond & Kollitz
2029 Century Park East, 3rd Floor
Los Angeles, CA 90067-2904

*Lydia Gonzalez*
_____
Clerk

-19-